J-A09020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GRANT D. AND EMOGENE WALK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellees | |
| v. | |
| JOHN G. WOLANSKI AND KAREN A. WOLANSKI, | |
| Appellants | No. 1203 MDA 2016 |

Appeal from the Judgment Entered July 28, 2016
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2014-3132

BEFORE:  SHOGAN, OTT, and STABILE, JJ.

MEMORANDUM BY SHOGAN, J.:　　　　　　　　**FILED AUGUST 09, 2017**

John G. Wolanski and Karen A. Wolanski ("Appellants") appeal from the judgment entered on July 28, 2016, in favor of Grant D. Walk and Emogene Walk ("Appellees").  This judgment was entered after the April 15, 2016 verdict in favor of Appellees following a nonjury trial.[1]  We affirm.

---

[1]  Appellants improperly purport to appeal from the June 24, 2016 order denying their motion for post-trial relief.  An appeal properly lies from the judgment entered after post-trial relief is denied.  ***Growall v. Maietta***, 931 A.2d 667, 669 n.1 (Pa. Super. 2007).  Here, Appellants filed their notice of appeal prematurely on July 21, 2016, prior to the entry of judgment.  However, we note that a judgment entered during pendency of an appeal is sufficient to perfect appellate jurisdiction.  ***Drum v. Shaull Equipment and Supply, Co.***, 787 A.2d 1050, 1052 n.1 (Pa. Super. 2001).  In the case at bar, Appellants filed a *praecipe* for the entry of judgment on July 28, 2016, and judgment was entered that same day.  Therefore, Appellants' appeal is properly from the July 28, 2016 judgment.  ***See*** Pa.R.A.P. 905(a)(5) (stating
*(Footnote Continued Next Page)*

On August 18, 2014, Appellees filed a complaint to quiet title and for ejectment against Appellants. On October 10, 2014, Appellants filed an answer, new matter, and counterclaim to quiet title and for ejectment. The matter was heard by the trial court sitting without a jury on December 17, 2015.

After consideration of the testimony from December 17, 2015, and the parties' proposed findings of fact and conclusions of law, the trial court found as follows:

1. The parties are owners of adjoining parcels of real property located in Taylor Township, Centre County, Pennsylvania.

2. The parties dispute which side of Goss Hollow Lane the boundary between their properties is located, and the right of [Appellants] to use a roadway across the disputed area to access their property from Goss Hollow Lane.

3. The area in dispute is trapezoidal in shape, approximately 319.55 feet in length on the longest side and varying in width from approximately 50 feet to the center of Goss Hollow Lane (or approximately 34 feet to the edge of the right of way of Goss Hollow Lane) on one end to approximately 40 feet to the center of Goss Hollow Lane (or approximately 24 feet to the edge of the right of way of Goss Hollow Lane) on the other end.

4. The disputed area consists of unenclosed woodland.

5. [Appellees] acquired their tract of land by a deed dated June 15, 1993, which is recorded in the Office of the Recorder of Deeds of Centre County at record Book 700, Page 1136. [Appellees'] Exhibit 1.

_(Footnote Continued)_ ————————————

that a notice of appeal filed after the trial court's determination but before entry of appealable order shall be treated as filed after such entry and on date of entry). We have amended the caption accordingly.

6. Following a retracement survey, [Appellees] issued a deed dated September 26, 2008, describing the property in accordance with the boundary retracement survey, which is recorded at Record Book 2021, Page 181. [Appellees'] Exhibit 3.

7. [Appellees'] deed describes the disputed boundary line as "South four (4) degrees and thirty-nine (39) minutes West seventeen and five-tenth (17 5/10) rods to a stone at the edge of the public road. . . ." [Appellee's] Exhibit 3.

8. [Appellants] acquired their tract of land pursuant to an Agreement of Sale dated 1998, and by a deed dated September 22, 2003, which is recorded in the Office of the Recorder of Deeds of Centre County at Record Book 1605, Page 477.

9. [Appellants] also recorded a corrective deed dated August 11, 2009, at Record Book 2041, Page 912. [Appellants'] Exhibit 2.

10. [Appellants'] deed describes the disputed line as, "N 3 ½° W, 37 perches to stones at public road; thence by said public road, N 4 ½° E, 17.5 perches to a chestnut. . . ." [Appellants'] Exhibit 2.

11. The parties do not dispute each other's chains of title to their respective properties.

12. Both parties have used their respective properties for general recreational purposes such as hunting and cutting firewood.

13. [Appellants'] driveway was previously a logging path, and the portion of the driveway that connects to Goss Hollow Lane is located within the disputed area.

14. After becoming aware of [Appellants'] claimed ownership of the disputed area, [Appellees] had their attorney send two letters notifying [Appellants] that [Appellees] owned the disputed area and to cease using the roadway to access their property. [Appellees'] Exhibits 6, 7.

15. After receiving the letters, [Appellants] continued using the driveway and moved forward with their plans to build a cabin on their property.

16. [Appellees] expert, Fred Henry, PLS, was retained in 2008 to perform a retracement survey of [Appellees'] property. [Appellees'] Exhibit 10, 11.

17. Mr. Henry relied on pins, old witness trees, and abandoned fence lines to establish the boundary on the eastern side of Goss Hollow Lane.

18. [Appellants'] expert, Edward Heary, PLS, created a Surveyor's Report dated October 15, 2014. [Appellants'] Exhibit 1.

19. Mr. Heary relied on stone row and the historical deed descriptions to establish the boundary on the western side of Goss Hollow Lane.

20. Old "No Trespassing" signs are located in the vicinity of where [Appellees] allege the boundary line to be located on the eastern side of Goss Hollow Lane. [Appellees'] Exhibit 5.

21. [Appellee] Grant Walk testified that, at some point after 2003, [Appellant] John Wolanski inquired about purchasing a triangle of [Appellees'] property, including the area currently in dispute.

Trial Court Opinion, 4/15/16, at 1-3. On April 15, 2016, a verdict and order was entered in favor of Appellees. The order provided, in relevant part, as follows:

1. The Court finds in favor of [Appellees].

2. The common boundary line between [Appellees'] property and [Appellants'] property is as described and located on the Boundary Retracement Survey performed by Fred L. Henry, PLS, [Appellees'] Exhibit 11.

3. [Appellants] have not acquired an easement by prescription over the roadway across the disputed area, and [Appellants] are barred from travelling across said roadway to the extent it crosses [Appellees'] property.

4. [Appellants] are barred from asserting any right, title, lien, or interest inconsistent with the lawful ownership and title of [Appellees'] property using the boundary as depicted in [Appellees'] Exhibit 11.

Trial Court Opinion, 4/15/16, at 9. As noted earlier, judgment was entered on July 28, 2016, and this timely appeal followed. Both the trial court and Appellants have complied with Pa.R.A.P. 1925.

On appeal, Appellants raise the following issues for this Court's consideration:

A. Where adjoining property owners' deeds both refer to a public road as a boundary (with words of "by said public road" and "at the edge of the public road"), is the title established for both parties to extend to the middle of the public street?

B. Where Appellants' deed originated prior to the Appellees', should the description in the Appellants' deed be superior to the Appellees' deed description?

C. In the alternative, if it is held that Appellants do not hold title to the public roadway, will use by the Appellants and their predecessors in title of the entrance constitute a prescriptive easement through a narrow strip of land now claimed by the Appellees?

Appellants' Brief at 5.

As this matter was decided by the trial court without a jury, our standard of review is as follows:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by

- 5 -

competent evidence in the record or if its findings are premised on an error of law. However, where the issue concerns a question of law, our scope of review is plenary.

The trial court's conclusions of law on appeal originating from a non-jury trial are not binding on an appellate court because it is the appellate court's duty to determine if the trial court correctly applied the law to the facts of the case.

*Stephan v. Waldron Electric Heating & Cooling LLC*, 100 A.3d 660, 664-665 (Pa. Super. 2014) (citation omitted).

Moreover, it is well settled that "the primary function of the trial court resolving a boundary dispute is to ascertain the intent of the grantor at the time of the original subdivision." *Pencil v. Buchart*, 551 A.2d 302, 305-306 (Pa. Super. 1988).

As a general rule, where there is a conflict between courses and distances or quantity of land and natural or artificial monuments, the monuments prevail. Moreover, natural monuments[2] normally take preference over artificial marks or monuments. These rules, however, are not imperative but are aids in construction that must yield to a contrary showing.

> [2] Monuments are visible markers or indications left on natural or other objects indicating the line of a survey. Natural objects, such as the bank of a stream, the shore of a lake, a precipice or ledge or rocks, a fountain or spring of water, may be adopted as monuments fixing the location of lines and corners.

*Id*. at 306 (internal citations, quotation marks, and ellipses omitted). Ultimately, the question concerning where a boundary line is located is a question for the fact-finder. *Schimp v. Allaman*, 659 A.2d 1032, 1034, (Pa. Super. 1995). "Where, as here, the trial court sat as the fact-finder,

we will not reverse on appeal unless the court's findings are not supported by credible evidence." *Id*.

Additionally, in a nonjury trial, the trial court sitting as the finder of fact is free to believe all, part, or none of the evidence, and this Court will not disturb the trial court's credibility determinations. ***Voracek v. Crown Castle USA Inc.***, 907 A.2d 1105, 1108 (Pa. Super. 2006). "The trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." ***Shaffer v. O'Toole***, 964 A.2d 420, 422-423 (Pa. Super. 2009).

In their first issue on appeal, Appellants allege that because both parties' deeds refer to the disputed boundary as a public road, the boundary should be the middle of that public road. Appellants' Brief at 12. Appellants argue that *The Pennsylvania Society of Land Surveyor's Boundary Retracement Principles and Procedures for Pennsylvania* is the "gospel" for land surveyors and compels this result. *Id*. However, this document was not mentioned in Appellants' proposed findings of fact, it was not admitted into evidence, and there is no indication of this writing's precedential value. Thus, this writing was never before the trial court, and Appellants have not established that the trial court was in any way bound by this document.

Therefore, we cannot conclude that there was any error in the trial court not considering this writing.

However, while *The Pennsylvania Society of Land Surveyor's Boundary Retracement Principles and Procedures for Pennsylvania* was not properly before the trial court, Appellants direct our attention to a quote in that text which cites **Firmstone v. Spaeter**, 25 A. 40 (Pa. 1892). Appellants' Brief at 12. In **Firmstone**, the Pennsylvania Supreme Court stated:

> If the land is described as 'bounded on,' 'running along,' the highway, and the like, the boundary line is the center of the highway, although the dimensions of the lot would exclude the highway; and in all cases of doubt the presumption is always in favor of the boundary being in the center of the road . . . where a street is called for as a boundary, the middle line of the street is always intended, unless the contrary plainly appears.

**Firmstone**, 25 A. at 41 (internal citation and quotation marks omitted). Thus, while **Firmstone** mentions a presumption that the center of the road is the boundary, in the case at bar, the trial court was not constrained by that language. As noted, that point is a presumption, and the trial court was permitted to review other evidence including monument evidence of stones, pins, and trees. **Pencil**, 551 A.2d at 305-306. Indeed, the trial court noted:

> Here, the deeds conveying the properties allow for two different interpretations as to the location of the boundary between the two tracts of land. Both parties relied on expert testimony to explain language in the deeds and the monuments found on the properties. Both deeds reference the public road ("edge of the public road," "at the public road," and "by said public road") and both proposed boundaries are near the public

road, Goss Hollow Lane. As such, the road alone does not end the Court's inquiry.

Trial Court Opinion, 4/15/16, at 6.

Appellants next point to **Nesbit v. Eichelberger**, 67 Pa. D. & C.2d 254 (C.P. York County 1974), as support for their argument. However, we point out that this Court is not bound by decisions of the courts of common pleas. **U.S. Bank Nat. Ass'n v. Powers**, 986 A.2d 1231, 1233 n.3 (Pa. Super. 2009). Additionally, we agree with Appellees that the trial court's conclusion in **Nesbit**, wherein the trial court found that a boundary followed the contours of a road, was a factual finding based on all of the evidence presented in that case, and not a conclusion of law. Appellees' Brief at 21. For these reasons, we discern no error of law in the trial court declining to find the entirety of Goss Hollow Lane was the boundary. As noted, the survey relied upon and adopted by the trial court placed the boundary at the edge of the roadway. Trial Court Opinion, 4/15/16, at 2, 9.

Appellants also argue that Appellees' expert, Fred Henry, P.L.S., relied on an erroneously placed pin. Appellants' Brief at 20. This assertion is based on a survey that was conducted in another matter on adjacent property owned by Charles Rider II. In that matter, Appellants filed an ejectment action against Mr. Rider at Centre County Civil Division Number 2006-1889. However, that matter ended in a settlement agreement. The trial court addressed the issue of the pin at the corner of the Rider property as follows:

The [c]ourt took judicial notice of the lawsuit between John and Karen Wolanski and Charles Rider. The 2006 litigation, however, is not dispositive in this case. The case filed at 2006-1889 concluded with the entry of an order upon joint praecipe for settlement after [Appellants] and Mr. Rider reached a property line agreement. Mr. Henry did not rely on the pin placed marking the agreed boundary; rather, Mr. Henry relied on a different pin, among other things, to determine the boundary between [Appellees] and [Appellants]. [Appellees] were not a party to the 2006 litigation or subsequent boundary agreement, and the agreed-to-pin is not in the area of the instant dispute. As such, the [c]ourt did not commit an error of law in finding the Henry Survey to be accurate.

Pa.R.A.P. 1925(a) Opinion, 8/26/16, at 2.

We agree with the trial court. Appellees were not a party to that 2006 litigation. Moreover, Appellants cite no relevant authority for their argument, and this Court is aware of no basis in law upon which Mr. Henry was required to rely upon a boundary or marker from a lawsuit that ended in a settlement between Appellants and Mr. Rider regarding the location of a pin. We conclude that the argument regarding the pin is meritless.

Ultimately, in disposing of the instant case, the trial court relied on the survey conducted by Mr. Henry and based its decision principally on a determination of credibility. Trial Court Opinion, 4/15/16, at 6-7. The trial court gave significant weight to Mr. Henry's use of physical monuments as indicators for the property boundary. *Id*. Specifically, the items upon which Mr. Henry relied were iron pins within stone piles on the southwestern and southeastern corners of Appellees' property, wire fence running along the eastern and western sides of the property, and several

trees in the northeastern corner. *Id*.; N.T., 12/17/15, at 44-48. Mr. Henry used GPS positioning to determine the angle of the missing side. Trial Court Opinion, 4/15/16, at 6-7; N.T., 12/17/15, at 48. Additionally, the trial court was compelled by old "No Trespassing" signs that were located near Mr. Henry's proposed border. Trial Court Opinion, 4/15/16, at 7.

Edward Heary, P.L.S., conducted a survey for Appellants and also relied on physical monuments around the property. N.T., 12/17/15, at 79-81. Much of the survey relied on the presence of a stone row located north of the property in question. *Id*. However, the trial court found the reliance on the stone row more speculative than the monuments used by Mr. Henry in Appellees' survey. Trial Court Opinion, 4/15/16, at 7. The trial court came to its conclusion largely by finding Appellees' survey more compelling than Appellants' survey, as it was free to do. *Schimp*, 659 A.2d at 1034; *Voracek*, 907 A.2d at 1108. Moreover, there is no indication that the trial court capriciously disbelieved the evidence. *Shaffer*, 964 A.2d at 423. Accordingly, we conclude that the trial court committed no abuse of discretion or error of law in determining the boundary of the property.

Next, Appellants assert that because their deed originated prior to Appellees' deed, the description in Appellants' deed should be superior. Appellants' Brief at 25 (citing *Walleigh v. Emery*, 163 A.2d 665 (Pa. Super. 1960)). In *Walleigh*, this Court held that when a conflict in a boundary description occurs as result of conveyances from a common grantor, the title

- 11 -

of the grantee in the first conveyance is superior.  *Id*. at 668.  However, in *Walleigh*, this Court further explained that an earlier deed "is therefore superior where the boundaries clash, but superior only upon the basis of their own deed calls reconciled with the monuments on the ground and proceeding from the point of beginning established in their own deed."  *Id*.  Thus, the fact that Appellants' deed was first in time is a factor insofar as that deed can be reconciled with monuments on the ground, but it is not alone dispositive.  We reiterate that the location of a boundary line is a question for the fact-finder.  *Schimp*, 659 A.2d at 1034.

Here, after considering **all** of the evidence, the trial court concluded that the boundary was consistent with the description in the survey conducted by Mr. Henry and based its decision primarily on the weight of the evidence.  Trial Court Opinion, 4/15/16, at 6-7.  As set forth above, the trial court, sitting as the finder of fact was free to believe all, part, or none of the evidence.  *Voracek*, 907 A.2d at 1108.  The fact that Appellants' predecessors' deed predated Appellees' predecessors' deed from a common grantor was not the only determining factor in this matter.  As discussed in our disposition of Appellants' first issue above, the trial court carefully weighed and considered all of the evidence in making its determination, and we discern no error.

In their final issue, Appellants aver that, even if they are not deemed to hold title, their use of the land created a prescriptive easement over the disputed property. Appellants' Brief at 25. We disagree.

"It is well-settled that a prescriptive easement is created by (1) adverse, (2) open, (3) notorious, (4) continuous and uninterrupted use for a period of 21 years." *PA Energy Vision, LLC v. South Avis Realty, Inc.*, 120 A.3d 1008, 1014 (Pa. Super. 2015) (citation omitted). However, prescriptive easements on unenclosed woodlands are prohibited by statute. *Sprankle v. Burns*, 675 A.2d 1287, 1289 (Pa. Super. 1996); 68 P.S. § 411. "The character of the land itself is determinative of the application of the Act of 1850.[2]" *Minteer v. Wolfe*, 446 A.2d 316, 320-321 (Pa. Super. 1982) (internal citation and quotation marks omitted).

The trial court concluded that the evidence established the property in dispute was unenclosed woodland. Trial Court Opinion, 4/15/16, at 8. This determination was made after the trial court judge had an opportunity to view the property in person. N.T., 12/17/15, at 5. Moreover, Appellant John Wolanski testified on cross-examination that the disputed area was "vacant woodland," and photographs depict the trees and brush adjacent to the path on the edge of wooded, undeveloped property. N.T., 12/17/15, at 120; Appellees' Exhibit 8, 1-3. Additionally, in contrast to *Minteer*, there is

---

[2] "The Act of 1850" refers to what is now 68 P.S. § 411.

- 13 -

no evidence that the trees and brush were planted as a fence or barrier that would indicate some degree of enclosure. Appellees' Exhibit 8, 1-26; *Minteer*, 446 A.2d at 321 (where the growth that the appellees alleged was woodland consisted of a fence row of trees and brush, which is commonly used in rural areas to mark boundary lines, and, therefore, the property was not unenclosed woodland).

Accordingly, we discern no error of law or abuse of discretion in the trial court's conclusion that the property was unenclosed woodland. Thus, Appellants were prohibited from establishing a prescriptive easement. *Sprankle*; 68 P.S. § 411.

For the reasons set forth above, we conclude that Appellants are entitled to no relief. Therefore, we affirm the July 28, 2016 judgment entered on the April 15, 2016 verdict in favor of Appellees.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/9/2017